UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KIMMERLY M. MOORE,** | |
| Plaintiff, | Case No. CV-12-663 |
| v. | |
| **CHUCK STEVENS AUTOMOTIVE, INC., and CAPITAL ONE AUTO FINANCE, INC.,** | |
| Defendant(s). | |

# COMPLAINT

## THE PARTIES

1. Plaintiff, Kimmerly M. Moore is an individual resident and citizen of Baldwin County, Alabama.

2. Defendant, Chuck Stevens Automotive, Inc., (hereinafter "Chuck Stevens") is and at all times mentioned herein is a corporation with its principal office in Baldwin County, Alabama.

3. Defendant, Capital One Auto Finance, Inc., (hereinafter "Capital One") is and at all times mention herein is a corporation that financed the transaction at issue here.

## JURISDICTION

4. This action includes claims which arise under the statutes of the United States and this Court's jurisdiction is conferred by 28 U.S.C. § 1331. Plaintiff also makes claims under Alabama Law and this court has jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

**FACTUAL ALLEGATIONS**

5. In September or October of 2011, Plaintiff received a letter from Capital One offering her up to $30,000.00 for financing an automobile to be purchased at Chuck Stevens's dealership in Bay Minette, Alabama.

6. The Plaintiff needed an automobile and wanted to take advantage of this offer of financing at a dealership she thought could trust.

7. On or about October 31, 2011 Plaintiff purchased one used 2011 Chevrolet Impala from the defendant Chuck Stevens. The automobile was purchased for the Plaintiff's personal use and enjoyment.

8. Chuck Stevens was aware of the automobile was defective and intentionally hid and suppressed the existence of the defects from the plaintiff. This case arises out of defects of said automobile and the failure to properly disclose the financing terms.

9. The automobile was manufactured by General Motors and it was represented to Plaintiff that it was subject to a manufacture's warranty at the time of purchase.

10. When she reached the dealership she was greeted by a used car salesman, one Mr. Lewis.

11. The sales representative, Mr. Lewis, pointed out the Impala and mentioned that it was like new, and that one of the salespersons had been allowing his wife to drive it and that it was a very safe car. Mr. Lewis went as far as to say, "You know when we let our families drive then, they are safe and reliable."

12. Lewis and other agents of Chuck Stephens made the following representations, on the day of the purchase, and thereafter that:

a. The automobile was like new and would be free of defects;

  b.  If there any minor omissions or malfunctions these would be corrected by Chuck Stevens and/or General Motors;

  c.  The vehicle was covered by the manufacturer's warranty;

  d.  Any problems with the automobile would be promptly remedied within the warranty period of the automobile;

  e.  20.31% was the best Annual Percentage Rate available;

  f.  The automobile met all applicable regulations and safety standards;

  g.  The automobile was safe and equipped with airbags; and

  h.  Chuck Stephens agents made other representations not specifically mentioned herein.

13. Said representations were false and the defendant, Chuck Stevens, knew they were false. Said defendant intentionally suppressed the fact that the automobile had numerous defects or the representations were made by mistake with the intent that Plaintiff would rely on them.

14. Relying on the representations made by Chuck Stevens, the Plaintiff purchased the automobile and agreed to the financing at issue here.

15. During the sales negations, the Plaintiff asked Mr. Lewis, Chuck Steven's salesperson, for a "Car Fax" on this particular vehicle. Mr. Lewis asked Ms. Moore to have a seat and stated that he would get her all the information she needed.

16. Mr. Lewis came to Ms. Moore with the documents to sign for the automobile and she asked him again about the Car Fax. He advised her that he forgot to get it and that he would get a Car Fax report for her along with all the paperwork for the car but he never did.

17.     About three days after purchase, while Plaintiff was driving, she noticed about where the odometer was, there was a message saying "SERVICE AIR BAG."

18.     Thereafter Plaintiff took the vehicle to a different Chevrolet dealer to have her it serviced.

19.     While having the automobile serviced Plaintiff was told that the car had been in an accident, had replacement parts and the manufacturer would not honor the warranty for that reason

20.     An at the second Chevrolet dealership, an employee noticed, and pointed out to Ms. Moore, tape residue all along the passenger side doorframe from the rear tire up over both passenger doors and to the front right tire.

21.     The Chevrolet mechanic explained to Plaintiff that her car had been in an accident and, since the accident was not noted in the vehicle's history, her factory warranty was "null and void." The mechanic stated this was, "because they didn't know what pieces and parts had been replaced and which were original to the car and therefore covered under the original warranty."

22.     Plaintiff was further informed that both of her car's air bags had deployed and will not deploy again in the event of a car accident.

23.     After these revelations, Plaintiff purchased a "Car Fax" report online. After reviewing the report she learned that:

   a.   The Her vehicle had previously been used as a rental car; and

   b.   That the mileage on her purchase documents was understated.

24.     The statements and warranties described above were a part of the basis of bargain between the parties in that the Plaintiff relied upon the truth of these affirmations in purchasing the automobile.  Said representations constituted an express warranty under the Code of

Alabama, 1975, Section 7-2-313.

25. Prior to bringing this action, the Plaintiff gave Chuck Stephens notice of the aforesaid breach pursuant to Code of Alabama, (1975) Section 7-2-607(3).

## COUNT ONE
## FRAUD

26. Plaintiff realleges and adopts all of the foregoing relevant paragraphs contained in this complaint.

27. This action is brought pursuant to the Code of Alabama, 1975, § 6-5-100, 6-5-101, and other applicable law.

28. The vehicle at issue was defective as described above.

29. Furthermore, a 20.31 % APR was not the best rate available, because Capital One paid Chuck Stephens a yield spread premium or kickback in exchange for the higher rate.

30. On information and belief, Chuck Stephens and Capitol One have an agreement whereby the higher the interest rate Chuck Stephens can sell its customers in a retail installment contract the greater the kick back or "yield spread" Capital One will pay when it purchases the contract.

31. The representations about the quality of the vehicle and financing were false and Chuck Stevens, knew they were false.

32. Chuck Stephens intentionally suppressed the fact that the automobile had numerous defects.

33. Chuck Stevens also suppressed the fact that it received a yield spread premium from Capital One and was therefore aware that the plaintiff could have obtained a lower APR on her installment purchase contract.

34. Plaintiff believed said representations and reasonably relied on them and innocently acted upon them to her detriment by purchasing said automobile and agreeing to the financing.

35. As approximate result of said representations made by defendant, Chuck Stevens, Plaintiff was caused to suffer the following injuries and damages:

    a. Loss of money; and
    b. Mental anguish and embarrassment.

36. Plaintiff claims punitive damages of the defendants, Chuck Stevens because of the intentional or gross and reckless nature of the fraud.

**WHEREFORE**, Plaintiff demands judgment against the defendant Chuck Stevens as follows:

    a. Compensatory and Consequential damages.
    b. Punitive damages.
    c. Reasonable attorney's fees
    d. Costs of this action.
    e. Whatever further and different legal and/or equitable relief to which the Plaintiff may be entitled in this cause.

## COUNT TWO
## FRAUD IN THE INDUCEMENT

37. Plaintiff realleges and adopts all of the foregoing relevant paragraphs contained in this complaint.

38. Chuck Stevens, represented to Plaintiff that said automobile made the subject of this action would be delivered to her free from defects and if there were defects, the said defects would be promptly repaired.

39. In fact, said automobile was not free from defects, was not fit for it's ordinary and particular uses, and the defects have not been repaired.

40. The representations above, which were made to Plaintiff, were, in fact, false and fraudulent. Said representations made by the defendant Chuck Stevens, to induce her to purchase said automobile

**WHEREFORE**, Plaintiff demands judgment against the defendant Chuck Stevens, for actual and punitive damages, separately and severally, in an amount in excess of the jurisdictional requirements of this court, to be determined by a struck jury, plus costs and interest.

## COUNT THREE
## CIVIL CONSPIRACY

41. Plaintiff realleges and adopts all of the relevant foregoing paragraphs contained in this complaint.

42. Capital One and Chuck Stephens conspired to cause the injuries and damages complained of herein.

43. Capital One participated in the conspiracy by hiring Chuck Stevens as its sales agrent and by furnishing to the documents and forms on which the fraud was committed and by requiring that they be used in the installment sale as a condition precedent to its purchase of the installment contract.

44. As a proximate result thereof, the Plaintiff was injured and damaged.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff prays for compensatory and punitive damages as may be allowed by law.

## COUNT FOUR
## TRUTH IN LENDING ACT ("TILA")

45. Plaintiff realleges and adopts all of the relevant foregoing paragraphs contained in this complaint.

46. Chuck Stevens is a "creditor" within the meaning of TILA and Regulation Z. During each of the last several years, Chuck Stevens entered into more than 25 transactions per

year in which credit is extended in exchange for a finance charge, or in which a consumer contracted to pay for a vehicle in four or more installments.

47. The transactions between the plaintiff and Chuck Stevens were extensions of consumer credit by a creditor subject to TILA and Regulation Z.

48. Regulation, Z, 12 C.F.R. § 1026.18, provides that the creditor shall disclose the following information as applicable:

> (c) Itemization of amount financed.
> (1) A separate written itemization of the amount financed, including:
> (i) The amount of any proceeds distributed directly to the consumer.
> (ii) The amount credited to the consumer's account with the creditor.
> (iii) Any amount paid to other persons by the creditor on the consumer's behalf. The creditor shall identify those persons.
> (iv) The prepaid finance charge.

49. Regulation Z, at 12 C.F.R § 1026.17(a)(1), requires that the disclosures specified in §1026.18 be made "clearly and conspicuously," which includes the requirements that they be accurate.

50. Plaintiff's Retail Installment Contract ("RIC") discloses a charge for a service contract in the amount of $2,000.00. The RIC further states that this entire sum was paid to "PERFORMANCE FIRST" when, in actuality, Chuck Stephens kept all of part of this charge.

51. Furthermore, the contract states:

> ➢ **Interest Sur Charge Fee.** You agree you pay an interest sur charge of  $__N/A__
> 
> ➢ **Processing fee.** You agree to pay a processing fee of  $__N/A__

52. The RIC states Plaintiff was charged a fee for document processing, in contradiction. Under the heading the *Itemization of Amount Financed* is stated the following:

> ➢ *DEALER/DOC FEE*          $598.50

53. Plaintiff also paid a hidden interest surcharge in the form of the "Yield Spread Premium" mentioned above.

54. Plaintiff suffered actual damages from the misleading and inaccurate disclosures, in that she was overcharged.

**WHEREFORE**, plaintiff requests that the Court enter judgment in her favor against Chuck Stevens as follows:

   a. For appropriate actual and statutory damages.
   b. For attorney's fees, litigation expenses and costs.
   c. For such other or further relief as the Court deems appropriate.

## COUNT FIVE
## BREACH OF EXPRESS WARRANTY

55. Plaintiff realleges and adopts all of the foregoing relevant paragraphs contained in this complaint.

56. The defendant, Chuck Stevens represented and warranted to Plaintiff that said automobile would be free of defects and that if any defects were discovered that the same would be promptly corrected.

57. After purchasing said, automobile Plaintiff discovered numerous defects as stated which render the vehicle unsafe.

58. Plaintiff alleges that there are other numerous defects not listed above.

**WHEREFORE**, Plaintiff demands judgment against the Defendant, Chuck Stevens, as follows:

   a. Compensatory punitive damages.
   b. Consequential damages.
   c. Reasonable attorney's fees pursuant to Ala.Code 1975 § 8-20-8.
   d. Costs of this action.
   e. Whatever further and different legal and/or equitable relief to which the Plaintiff may be entitled in this cause.

## COUNT SIX
## BREACH OF IMPLIED WARRANTY

59.  Plaintiff realleges and adopts all of the foregoing relevant paragraphs in this complaint.

60.  At the time of the Plaintiff's purchase Chuck Stevens expressly warranted and warranted by implication that said automobile was free from defects and was fit for its ordinary and particular uses or if there were defects, that the same would be promptly repaired to the Plaintiff satisfaction.

61.  The total cash price of the said automobile at issue in the cause was $21,961.48 and Plaintiff found that the said automobile was defective as stated above.

62.  Plaintiff further aver that the defendant, Chuck Stevens has been notified of the existence of said defects. Plaintiff was promised that the defects would be repaired to her satisfaction, but the defendant, Chuck Stevens has failed and/or refused to correct said defects.

**WHEREFORE**, Plaintiff demands judgment against the defendant Chuck Stevens as follows:

   a.  Compensatory and punitive damages.
   b.  Consequential damages.
   c.  Reasonable attorney's fees.
   d.  Costs of this action.
   e.  Whatever further and different legal and/or equitable relief to which the Plaintiff may be entitled in this cause.

## COUNT SEVEN
## BUYER'S CLAIM FOR DAMAGES
## FOR ACCEPTED NON-CONFORMING GOODS

63.  Plaintiff realleges and adopts all of the foregoing relevant paragraphs contained in the complaint.

64.  Pursuant to Alabama Code § 7-2-714, Plaintiff avers that Chuck Stevens breached the agreement set out above in that Chuck Stevens, failed to provide an automobile which was

free from defects and which was fit for its ordinary and particular uses as was represented and promised to Plaintiff.

**WHEREFORE**, Plaintiff asserts the following claim of relief against the defendant Chuck Stevens:

a. Compensatory damages, costs and attorney's fees.
b. Cancellation of recession for the contract for purchase and a refund of all amounts paid by the Plaintiff to the defendant(s).
c. Any such other, further and different and/or equitable relief as the Plaintiff may be entitled herein.

## COUNT EIGHT
## REVOCATION OF ACCEPTANCE

65.   Plaintiff realleges and adopts all of the foregoing relevant paragraphs contained in this complaint.

66.   Pursuant to Alabama Code § 7-2-608, §8-20A-1 et. seq., the Plaintiff avers that said nonconformities in the specified automobile substantially impaired its value to them, that Plaintiff have given the defendant(s), and Chuck Stevens, the opportunity to cure said nonconformities, which nonconformities have not been cured to Plaintiff satisfaction and that Plaintiff acceptance of said automobile was reasonably induced either by difficulty of discovery before acceptance or by the seller(s)' assurances, and that Plaintiff have, within a reasonable time after discovering said nonconformities, notified the defendant(s), and Chuck Stevens, and delayed exercising the right to rescind due to the promises or the efforts of the defendant(s), and Chuck Stevens to cure said nonconformities.

**WHEREFORE**, Plaintiff asserts the following claim of relief against the defendant(s):

a. Compensatory damages, costs and attorney's fees.
b. Cancellation of recession for the contract for purchase and a refund of all amounts paid by Plaintiff to the defendant(s).
c. Any such other, further and different and/or equitable relief as Plaintiff may be entitled herein.

## COUNT NINE
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

67. Plaintiff realleges and adopts all of the foregoing relevant paragraphs contained in this complaint.

68. Pursuant to Alabama Code § 7-2-314, Plaintiff aver the aforesaid automobile, which is the subject of this action, was not fit for the ordinary purposes for which it was to be used, did not conform to the promises and/or affirmations of the fact made by the defendant(s), and Chuck Stevens, was not merchantable in that it was not of average suitability in the market place. Indeed, said automobile was not reasonably fit for the general and ordinary use for which the said automobile was sold.

**WHEREFORE**, Plaintiff asserts the following claim of relief against the defendant(s), and Chuck Stevens:

    a.    Compensatory damages, costs and attorney's fees.
    b.    Cancellation of recession for the contract for purchase and a refund of all amounts paid by Plaintiff to the defendant(s).
    c.    Any such other, further and different and/or equitable relief as Plaintiff may be entitled herein.

## COUNT TEN
## BREACH OF IMPLIED WARRANTY OF
## FITNESS FOR A PARTICULAR PURPOSE

69. Plaintiff realleges and adopts all of the foregoing relevant paragraphs contained in this complaint.

70. Pursuant to Alabama Code § 7-2-315, Plaintiff aver that the aforesaid automobile sold by the defendant, Chuck Stevens, to Plaintiff were not fit for the particular purpose for which it was sold, namely to provide day to day transportation for the Plaintiff herein. Plaintiff relied on Chuck Stevens' skill and judgment in selecting an automobile, which would meet the Plaintiff particular purpose in purchasing the automobile.

**WHEREFORE**, Plaintiff asserts the following claim of relief against the defendant(s), and Chuck Stevens:

    a.    Compensatory damages, costs and attorney's fees.
    b.    Cancellation of recession for the contract for purchase and a refund of all amounts paid by the Plaintiff to the Defendant(s).
    c.    Any such other, further and different and/or equitable relief as the Plaintiff may be entitled herein.

### COUNT ELEVEN
### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. 2301, et seq.)

71. Plaintiff herein incorporates by reference every prior allegation as though here fully restated and realleged.

72. The Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter referred to as the "Warranty Act"), 15 U.S.C. 2301(3).

73. The agent, Chuck Stevens, is a "seller" and "warrantor" as defined by the Warranty Act, 15 U.S.C. 2301(4), (5).

74. The manufacturer, is a "seller" and "warrantor" as defined by the Warranty Act, 15 U.S.C. 2301(4), (5).

75. The automobile in question is a "consumer product" as defined in the Warranty Act, 15 U.S.C. 2301(1).

76. The automobile in question was manufactured and sold after July 4, 1975.

77. The express warranties given by Dealer and/or Manufacturer and/or required by statute to be given by the Dealer and/or Manufacturer, pertaining to the automobile are "written warranties" as defined in the Warranty Act, 15 U.S.C. 2301(6).

78.     That this sales transaction is subject to the provisions and regulations of the Magnuson-Moss Warranty Act (14 U.S.C. 2301, et seq).

79.     The above-described actions, including, but not limited to, the failure of Defendants to honor the warranty and/or to seek arbitration contrary to the Warranty Act, and/or to ignore the rules and regulations constitute breach of the written warranties and of the Warranty Act.

**WHEREFORE**, the Plaintiff is entitled to recovery of all monies paid on the automobile and to damages in the form of all out-of-pocket expenses and all other damages, including exemplary and consequential damages as determined by the truer of fact, but exceeding $25,000.00, together with all costs and actual reasonable attorney fees as provided for by statute and for whatever other legal and equitable relief the Court may deem proper.

a.      For appropriate actual and statutory damages.
b.      For attorney's fees, litigation expenses and costs.

### COUNT TWELVE
### FTC HOLDER RULE AND CAPITAL ONE 'S LIABILITY UNDER THE CONTRACT FOR PLAINTIFF'S CLAIMS AGAINST THE SELLER

80.     Plaintiff realleges and adopts all of the foregoing relevant paragraphs contained in this complaint.

81.     Pursuant to the Federal Trade Commission's "Holder Rule", and pursuant to the language in the Security Agreement subjecting the holder of the contract liable for all claims and defenses plaintiff has against the seller, Capital One is liable to plaintiff for all of her claims against Chuck Stevens.

**WHEREFORE**, Plaintiff demands judgment against the defendant, Chuck Stevens, for actual damages, separately and severally, in an amount in excess of the jurisdictional requirements of this court, to be determined by a struck jury, plus costs and interest.

**RESPECTFULLY** submitted on this the 31st day of October 2012.

/s/ Earl P. Underwood, Jr.
**EARL P. UNDERWOOD, JR. (UNDEE6591)**
**Attorney for Plaintiff**

**UNDERWOOD & RIEMER, PC.**
**21 South Section Street**
**Fairhope AL 36533**
**(251)-990-5558**

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY OF THE ISSUES IN THIS CASE.**

/s/ Earl P. Underwood, Jr.
**EARL P. UNDERWOOD, JR. (UNDEE6591)**

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL**

**Chuck Stevens Automotive, Inc.**
**1304 Highway 31 South**
**Bay Minette, AL 36507**

**&**

**Capital One Auto Finance, Inc.**
**c/o CSC Lawyers Incorporating Srv Inc.**
**150 S. Perry St.**
**Montgomery, AL 36104**